Good morning. May it please the court. My name is Brittany Wiegand and I'm here today under Colleen Remay's supervision on behalf of the appellant, Mr. Michael Triplett. On October 5th, 2012, in the middle of the afternoon, officers observed a group of approximately 10 men standing on a corner in an area a few blocks away from a hospital. An additional man approached the group and spoke to Mr. Triplett. Mr. Triplett then retrieved something from a nearby vehicle and exchanged it for cash. The district court erred when it held that this observation was enough to supply the necessary probable cause to search Mr. Triplett's vehicle. Nothing about the observation here showed a probability of criminal activity. And the fact that the officers were in the area to investigate an anonymous and unreported tip about drug activity doesn't change the fact that law enforcement failed to corroborate the existence of illegal activity. So we asked this court to reverse the district court's denial of the motion to suppress, vacate Mr. Triplett's conviction, and remand the case to the district court. Your Honors, the surrounding circumstances here suggest that this transaction was perfectly legal. It was out in the open, around other people, it occurred in the middle of the afternoon, and was near a hospital. In today's modern economy, plenty of people use online websites like Craigslist or Facebook Marketplace. And it's often safest for people to conduct those transactions in the exact same way that Mr. Triplett did here, out in the open, in public, and in the presence of others. The question here is not whether an officer could have been suspicious at all as a law enforcement officer, but the question is whether this transaction shows a substantial chance of criminal activity. The call and the single hand-to-hand transaction here simply aren't enough to show that something criminal was actually occurring. Put together, these two things merely show that there was a black car in the area and that somebody gave Mr. Triplett money for something small. But those two things together don't show that he's more likely than not to have committed a crime and that evidence of that crime would be in the vehicle. The government's brief at 18 suggests that because the transaction was commercial in nature, which the government asserts was something unusual in the middle of the city street, that that supports a finding of probable cause. But this fact doesn't add to the probable cause calculation because people engage in all sorts of transactions in a variety of places. And just the fact that something is commercial does not make it criminal. Nothing prohibits transactions from occurring in public, and conducting a transaction in public and in the presence of others is just as likely to suggest that it was something innocent. The government's brief at 18 also suggests that because Mr. Triplett didn't seem to be a social acquaintance with the unknown man and that he retrieved an item from a car means that it was illicit in some way. But those facts don't actually suggest criminality, which is what we need here. People conduct all kinds of transactions with others, and it's not criminal to simply transact with another individual, even if you don't know them. And again, because of the Internet, these transactions are- Counsel, Judge Ripple is trying to ask a question. I apologize. This weekend, I wonder, though, there aren't many commercial activities, even on the street, where the seller counts his money, walks across the street to another location, and retrieves the small object from a secreted place within his vehicle. Could not an experienced officer, whose job it is to be able to detect these kinds of incidents, very easily say, look, this is exactly the MO of someone who is dealing in an illicit substance. We see it on these streets all of the time. And he's got a lot of money in his pocket. He keeps his merchandise separate from his place of bartering, and he secretes it within his vehicle. Doesn't that make a difference? Not necessarily, Your Honor. In regards to the small object, it could have just been that Mr. Triplett, if he was selling something, homemade crafts, potentially, I don't know, a small object like a rosary, personalized individual sort of cards, raffle tickets, that he just wanted to store them in his vehicle. And the window was actually open in this case, which suggests that it wasn't actually being hidden. But regarding the trainer, the officer's training and experience, the lack of probable cause here can't just be supplemented by a general claim or reference to the officer's training and experience, because the officer never explained what it was about his training and experience that distinguished this transaction from a legal sales transaction. So when he saw an exchange of money for something small, we don't know exactly, you know, what about that would have... Was there any objection at trial along the lines of him not being qualified as an expert or not having stated his qualifications sufficiently? Did the defense counsel challenge that in any way? At this case, Your Honor, didn't go to trial, but in the... How did it get... How did this question get here? In the motion to suppress, in the motion to suppress, Mr. Triplett argued that this was simply based on a hunch. And so during the evidentiary hearing, the officer... Yes, Your Honor. And counsel didn't challenge the qualifications of the officer to make these kinds of calls? Your Honor, counsel asked the officer about his training and experience to which the officer replied. He mentioned his number of years of experience and his just the number of drug transactions that he had purportedly seen. But the government's job in proving probable cause is to bring out those facts and show what it is about someone's training or experience that supports that finding of probable cause. And so since the burden was on the government to show probable cause, the government should have brought those out in the court below. In virtually all other probable cause cases from the circuit, we see the amount of evidence in corroboration typically had by law enforcement. And that type of corroboration should be encouraged because it helps law enforcement distinguish from innocent activity like simple transactions on Craigslist and illegal drug transactions. If this court found that this ambiguous transaction could constitute probable cause, it would tell officers in this circuit that diligent police work is unnecessary. And this is particularly troubling in a day and age when a significant amount of commerce occurs online. And one safe way for people to conduct those transactions is by doing it just like Mr. Triplett did here in public, in the presence of others, and during the day. The single observation here, the hand-to-hand transactions between... I'm puzzled by that assertion. Is there any evidence in the record that online transactions are customarily completed by approaching cars, giving cash, and getting items from inside the car? Online transactions are customarily completed by delivery services. At least that's my experience. That's certainly true, Your Honor. But certain websites like Craigslist... And so my question is, is there any evidence of record that online transactions are customarily completed in the way in which this transaction was carried out? Not in the record, no. But the record does show that since this was in public and among others and during the day, those facts suggest that this was something perfectly innocent. That doesn't suggest criminality. Your Honors, if the court has no further questions, I'll leave my remaining time for rebuttal. I do have one question, if I may. What do you think the officers should have done before they made their arrest that they didn't do? Your Honor, I believe it starts with just receiving the call itself. It was not recorded in any way or memorialized, written down. The license plate wasn't in any way. But there wasn't any probing of the caller to find out their basis of knowledge. So not only do we have very few facts about the amount, what is occurring and how the person knows. We don't know how they know, what they know or why they were calling. So it's really hard to say that this type of call would even rise to the level of reasonable suspicion. But once officers were conducting surveillance, after seeing this single ambiguous transaction, they could have attempted to potentially shift locations and see another transaction to get more information and to increase the quality of information that they had at the moment. Thank you. Thank you. Because Judge Ripple asked a question while you were trying to reserve time for rebuttal, I'll give you one minute for rebuttal. Thank you, Your Honor. Mr. Fullerton. Yes. May it please the court. Good morning. The district court properly found that there was probable cause here. The. I'm going to stop you, Mr. Fullerton. If I may, because I want to talk about the totality of what low he also saw. He saw an unmanned approach trip. The man spoke to triplet handed him some amount of US currency. Triplet walks over to the back black car. He retrieves unknown small objects from the visor roof area of the passenger side of the car. Triplet hands those objects to the unknown man, and the man walks away. The unknown man is never stopped after the transaction to determine what triplet handed him. So far as the record reveals, police knew nothing about triplets criminal history, nor is there any evidence that they ran the plates on the car to see what it might turn up about the car or its owner. Although triplet and the other many was gathered with were detained, padded down and searched before the car was searched. There apparently was no incriminating evidence on their persons. So the hand-to-hand exchange alone, as viewed through the lens of Loyal's experience as a police officer, was the basis for the search. So it seems to me, you know, there's a split in the lower courts as to whether the observation of a hand-to-hand exchange of cash for a small unknown object by itself supports of finding a probable cause. You know, you have Dunlap, you have Thompson, blah, blah, blah, blah. The court has, to my knowledge, never gone so far as to hold that a hand-to-hand exchange of cash for an unknown object is sufficient to establish probable cause. You know, typically there's additional information pointing to the likelihood that the unknown small object is a drug of some sort, whether it be reports from a known reliable informant, a controlled by, observations made or evidence discovered in a Terry stop, and so on. I, just because a transaction looks like a drug deal, I don't know that that's enough to either conduct a search or just arrest a defendant without some additional evidence. What we're doing is speculating. I disagree, Your Honor. On a couple of things. First of all, there was an additional fact that was observed prior to the search of the car. And that was the fact that after Liaza had observed the actions of the defendant and the unknown man on the street, he called the other officers to the location. They responded. Liaza pointed Officer Bocanegra to the small black Chevy car, as had been identified in the anonymous call. And Bocanegra approached the open passenger side window, looked in and saw above the, I think the passenger side visor towards the roof of the vehicle. He saw a baggie or baggies sticking out from behind the visor. That's at page 100 of the hearing transcript. And it was only at that point that Bocanegra reached in, pulled out the baggie and discovered the suspect heroin. It was furthermore only at that point that anybody was detained or patted down or anything, or any arrests took place. So I disagree with you on the fact that that was the only thing and also on the time of the pat down. The other thing I would disagree with you on is the court has said that an officer's experience in training is certainly a factor to be used in determining whether there was probable cause. This officer, without challenge from the defense at the hearing, testified that in his training and experience, this appeared to be a drug sale. That was based on his having observed, I believe he said, over a thousand narcotics transactions during the course of his career. Now, the point is, yes, it could have been, for all he knew, there may have been, he was selling opera tickets out of his car on South 13th Street. But the officers didn't have to eliminate that as a possibility before they conducted a search. They only had to have probable cause, which is a fair probability that what they had observed was, in fact, a narcotics transaction. And given this officer's training experience, given all the circumstances, given what they had observed Mr. Triplett to do, the unknown man to do, and so on, there was certainly a fair probability at that point that what, in fact, had taken place was, as Liaza testified, he thought that it was, in fact, a street narcotics transaction taking place as one might expect it to take place, with the drugs hidden in a location remote from the defendant, where the stranger, that is the purchaser, is not introduced to the location where the drugs are. The stranger remained where he had met Triplett on the street. Triplett himself, Triplett by himself, went over to the drugs in the car. And again, as one might expect, there's a rapid parting of the ways between the purchaser and the seller. There's no lingering around. There's no talk about the product. It's a quick, one might say, one could fairly say it's furtive, even though it takes place during the daytime and on a public street, but it's furtive. Why wasn't he stopped? I'm sorry? Why wasn't the buyer of whatever it was stopped? I think Liaza testified that if he had stopped the buyer, or if somebody had stopped the buyer, it would have had, given the geography of the location, the layout of the streets, Triplett and the others would have been able to observe that from where they were standing. Because I believe they were looking down, there were positions that they could see down the cross street where the buyer had approached from and where the buyer had gone after the transaction. And they didn't want to alert Triplett and the others that, in fact, they were under surveillance and that the police were on location. That's why the buyer was allowed to walk away without interruption. But given all these circumstances and the officer's training experience, there was probable cause to conduct the search. That is the reach in to retrieve what was hidden above the visor in a baggie. And only then was an arrest made. And only then was the further search of the car made that disclosed all the other contraband, the heroin, the firearm, and so on. So given this, we think that the district court properly found that there had been probable cause and correctly denied the motion to suppress. Unless there are any other questions, we'd ask that the court affirm the denial of the motion to suppress. Thank you. Thank you. May I ask one? Oh, yeah. Certainly, Judge. I did not see anything in the brief, unless I'm just forgetting it, on seeing the baggies before deciding to pull them out. The red brief. Pages five to six says. Beyonce just took the baggies, period. Yes, I think you're correct. Your Honor, I don't think I mentioned that in the red brief. It is in the transcript of page one hundred. So I, unfortunately, didn't refer to that in the brief. It's my fault. But it was certainly in the record in an officer Bocanegra's testimony. And on what page, please? One hundred. One hundred. Yes. Thanks, Mr. Fullerton. Certainly.  Ms. Wiegand, anything further? Thank you. Yes, Your Honor. Just one point. In the appendix at 17, the magistrate's report and recommendation discusses the actual search and the moment at which the car was entered. The report writes, Bocanegra approached defendant's car and he reached inside the passenger side window where Loyaza had seen defendant remove the suspected drugs to sell to the unidentified man. So there's no finding in the magistrate's report and recommendation about the sort of pause to look in to inspect. And in the record at one hundred, we see Bocanegra's testimony that says, I approached the vehicle, the windows were down. I looked inside and could see baggies. I pulled on them and there was a total of three bags. So again, that supports the finding that this was sort of just one fluid look in, reach, and the search happened at that point. Not sort of this pause, pause and look. Thank you, Your Honor. Not sort of this what? Sort of pause to look first and then a continuation. It was one fluid reach in, grab, and that was the moment of the search. Thank you, counsel. The case is taken under advisement. Thank you.